LAND, J.
This is a suit to disbar the defendants for alleged professional misconduct in the matter of the sale and purchase of a judgment for $5,052.47 rendered by the Supreme Court in .favor of their client, Ferdinand Francois, in his suit against the Mai-son Blanche Comx>any for damages for personal injuries. . See Francois v. Maison Blanche Realty Co. et al., 134 La. 215, 63 South. 880. The judgment of the Supreme Court was rendered on November 3, 1913, *814 and a rehearing was denied on January 5, 1914.
A few hours after the judgment was rendered, Francois assigned and transferred all his right, title, and interest therein to Lawrence T. Kirn, for the purported consideration of $1,000, paid in lawful current money of the United States. As a matter of fact Francois received Kirn’s check for $800, and his verbal promise to pay $200 to Francois’ doctors. When the check was presented on the next day, payment was refused by the hank, as per instructions of Kirn. Francois’ employer, accompanied by counsel, called on Nix and Kirn for an explanation of the transaction, and the result was the surrender of the deed of assignment by Kirn, and the return to him of the dishonored check.
The apparent sale by Francois of his half Interest in the judgment for $5,052.47,’ for the small price of $800, with the approval of his counsel of record, naturally excited unfavorable comments, which led to an investigation of the facts before the disbarment committee appointed by this court. Several hearings were had before said committee, which found that Kirn was an interposed party procured by the defendants and purchasing, not for himself, but for their benefit. The committee further found that the defendants did not inform Francois that Kirn was an interposed party, but agreed to keep this knowledge from him, and advised and induced their said client to sell said judgment for a vile price, which he did, in ignorance of the fact that his own attorneys were the real purchasers.
We have heard the witnesses in open court, and after considering the. evidence have reached the same conclusions of fact.
Nix was the leader in the scheme to acquire for himself and associates the half interest of their client in the judgment rendered by this court. The Teissiers, without •demur, aided and assisted Nix in the procurement of the assignment of the judgment to Kirn, an intimate friend of Nix, who was ready and willing to assist him financially and otherwise.
Kirn broke up the deal by stopping payment of the check for $800, which he had given Francois. Whether,Kirn acted from conscientious scruples, or because the Teissiers failed to furnish their half of the price, need not be determined. Nix’s claim that he instructed Kirn to declare the deal off is denied by Kirn, and, even if true, is a mere palliating circumstance.
[1] Ignorance of law, or error of judgment, as to defendants’ right, to purchase the judgment in question, was urged at the bar.
The codal provisions as to litigious rights are as follows:
“Public officers connected with courts of justice, such as judges, advocates, attorneys, clerks and sheriffs, cannot purchase litigious rights, which fall under the jurisdiction of the tribunal in which they exercise their functions, under penalty of nullity, and of haying to defray all costs, damages and interest.” Civil Code, art. 2447.
“He against whom a litigious right has been transferred may get himself released by paying to the transferee the real price of the transfer, together with the interest from its date.” Civil Code, art. 2652.
“A right is said to be litigious whenever there exists a suit and contestation on the same.” Civil Code, art. 2653.
“The provisions of article 2652 do not apply:
“1. When the transfer has been made either to a co-heir or to the co-proprietor of the right.
“2. When such right has been transferred to a creditor as a payment of a debt due to him.
“3. When the transfer has been made to the possessor of the estate subject to the litigious right.” Civil Code, art. 2654.
“Litigious rights are those which cannot be exercised without undergoing a lawsuit.” Civil Code, art. 3556, No. 18.
The Code from motives of public policy, prohibits attorneys at law from purchasing litigious rights. Copley v. Lambeth, 1 La. Ann. 316; Morris v. Covington, 2 La. Ann. 259; Copley v. Moody, 2 La. Ann. 487.
[2] In Watterston v. Webb, 4 La. Ann. 173, where an attorney had purchased a judgment pending an appeal,-the court said;
*816 “The plaintiff had no connection with the litigation between the bank and Webb, and the purchase seems to have been a fair one. Article 2422, which prohibits attorneys from purchasing litigious rights which fall within the jurisdiction of the courts before which they practice, under the penalty of nullity and the payment of all the costs, damages, and interest, is imperative, and the district judge did not err in giving it effect.”
In Pipes v. Norsworthy, 25 La. Ann. 557, it was held that a purchase by an attorney of an interest in a judgment sought to be enforced was a nullity, because it was the sale of a litigious right.
Both of these decisions were affirmed in Buck & Beauchamp v. Blair & Buck, 36 La. Ann. 20, in which it was held that a judgment against which an action in nullity was pending was a litigious right, and that the transfer of an interest in such judgment to an attorney in part payment of fees was a nullity, because prohibited by article 2447 of the Civil Code. See, also, Denny v. Anderson, 36 La. Ann. 762, where an attorney purchased all of plaintiff’s rights in a pending suit.
[3] Act No. 124 of 1906 goes no further than to permit attorneys to acquire, by written .contract signed by the client, as their fee, an interest in the subject-matter of the suit. As shown by the context, the purpose of this provision was to prevent clients from beating their attorneys out of their fees, by compromising with defendants before judgment.
[4] In the case at bar there was no written contract transferring an interest in the suit for the stipulated contingent fee of 50 per cent. Article 2652 refers to sales of litigious rights permitted by law, and article 2654 exempts a coheir or a coproprietor from its provisions.
It follows that the purchase by defendants of the judgment in question was an act plainly prohibited by article 2447 of the Civil Code, and as such was reprehensible on the part of the attorneys. Defendants’ conscious- ■ ness of the impropriety of their conduct was indicated by the concealment from their client of their interest in the purchase.
Being the real purchasers, their interest conflicted with the interest of their client, and therefore they were morally unfit to advise him in the transaction.
The advice they gave to their client was perfunctory and made no impression on his understanding.
The assignment, which was dictated by one of the defendants, contains the following recitals:
“It is understood that the Supreme Court of Louisiana, which under the law has the last say in the matter, has this day rendered judgment in my favor and against the Maison Blanche Company in the neat sum of five thousand fifty-two and ii/ioo dollars, with all costs of court.”
“It is further understood that the said Maison Blanche Company has the right to apply for a rehearing, and the Supreme Court has the right to modify or entirely reverse the said judgment on a rehearing, and it is for that reason that I prefer to accept one thousand dollars now than to run the risk and suspense incident upon my awaiting the collection of the proceeds of my claim in due course.”
“It is further understood that, as my attorneys are entitled to one-half of .my claim and the judgment rendered thereon, I am only conveying my half interest.”
“It is further understood that the purchaser is to take all the risk, and that I do not to any extent warrant that he will realize anything on this purchase. I do agree, however, that I will never take any action to the prejudice of this act.”
If the transaction bad been really with Kirn, nothing more would have been necessary than an assignment of the judgment to him, without warranty. But, as Kirn was the alter ego of the defendants, they, in anticipation of future trouble over the transaction, put in the mouth of Francois declarations importing a knowledge on his part of the rules of practice in the Supreme Court, and of the power of that .tribunal to modify or entirely reverse the judgment on a rehearing.
Defendants, as lawyers, must have known that, even on the theory of chances, there *818 was little probability of .tbe granting of a rehearing in tbe Francois Case. While defendants carefully advised Francois as to tbe power of tbe Supreme Court to modify or reverse tbe judgment on rehearing, they admit that they did not advise him as to the improbability of tbe granting of a rehearing in tbe case.
The purchase of the judgment by the attorneys was not only in violation of a prohibitory law, but was surreptitious, and the client did not receive that disinterested advice, to which be was entitled. See Phipps v. Willis, 53 Or. 190, 96 Pac. 866, 99 Pac. 935, 18 Ann. Cas. 123.
The law is well settled that unfaithful or fraudulent conduct of an attorney towards bis client, showing the unfitness of tbe attorney to handle the affairs of others, is good ground for suspension or disbarment. 4 Cyc. 907.
As the defendants are young in years and experience at the bar, and as this was their first transgression against the ethics of the profession, we are of opinion that their punishment should be suspension, instead of disbarment.
It is therefore ordered that the license to practice law heretofore issued by this court to tbe defendant John D. Nix, Jr., be suspended for two years, and that the licenses of tbe defendants Fernand F. Teissier and Louis G. Teissier be suspended for one year, to commence to run from the date of the finality of this decree; and it is further ordered .that during said period each- of said defendants be prohibited from practicing, the profession of attorney and counselor at law within the limits of this state; and it is finally ordered that the defendants pay the costs of this suit.