LAND, J.
This suit was filed on 'December 16, 1903, by Prank Zengel, administrator of the succession of Samuel Powers, to annul the defendant’s several titles to squares 7 and 12 and that part of square 24 of Marly lying south of the Washington Shell road, and to have said property decreed to belong to said succession.
The petition represents that said three squares, with five others, were acquired by the deceased from the succession of P. N. Wood on May 31, 1870, by a certain notarial act of sale. The petition further represents that said succession was opened in 1894 by petitioner’s predecessor under an understanding and contract which continued when petitioner was appointed in 1896; between his then counsel, Hugh S. Suthon, and William H. Howcott, by which the latter was to furnish all necessary information and advance all necessary money needed in the administration of the succession, and in paying the taxes and redeeming the property of the succession.
The petition further represents that in 1884 and 1885 said three squares were sold and adjudicated to the state for the taxes of 1880, 1881, 1882, and 1883; that all of said sales were illegal and void for want of definite, correct, and sufficient description, and for want of notice to the tax debtor, who was then living in the city of New Orleans.
The petition further represents that said part of square 24 was redeemed by the said Howcott on June 16, 1900, and during the same year he purchased said squares 7 and 12 from the state auditor, and that said part of square 24 was sold to the said Howcott for the state tax of 1899, which sale was null and void for want of notice, said Powers having died in 1885, and no notice had been served on the petitioner as administrator.
The petition further represents that all of said acquisitions, either by redemption or by sale, were made by said Howcott after entering into said contract or understanding with petitioner’s said attorney, and consequently inured to the benefit of said succession ; that petitioner, personally and through his present counsel, has called upon said Howcott to transfer said property to said succession, and offered to refund all moneys advanced and paid out by said Howcott as soon as he would furnish a statement thereof, it being impossible to otherwise ascertain the amount thereof; but that said Howcott has failed and refused to comply with either demand.
The petition further represents that said acts of said Howcott in acquiring and holding the property in his own name are fraudulent, in bad faith, contra bonos mores, and in violation of a prohibitory law; that said Howcott is not, and never has been, in possession of said property or any part of it, nor has the state; that petitioner is in possession, except in so far as adverse possession is held by the succession of Alfred S. Gutieres, which is the subject of another suit.
This petition is signecl^by “Cunningham & Ounningham, Chas. Louque, Attorneys.”
The defendant in March, 1905, answered as follows:
“Now into court comes William H. Howcott, made defendant herein, and to plaintiff’s demand denies all and singular the allegations of the petition hereinbefore filed.”
“Further answering the defendant specially denies that he is the owner or possessor of the property described in the petition hereinbefore filed.”
In August, 1905, Adolfe Dugue, as administrator of the succession of Samuel Powers, filed a supplemental petition alleging that in 1903, prior to the filing of this suit, the said Howcott had transferred the squares in question, by deed without warranty, to the Aztec Land Company, which about a month later transferred a part of said property, to wit, square 12 and one-fourth of said portion of square 24, to the Quaker Realty Company.
*821 The. petition further represents that both of said corporations are the mere creatures of the said W. H. Howcott, he being the principal stockholder and actual manager thereof, and said companies knew that the said Howcott had no legal title to the property, and were well aware of the conduct of the said Howcott in the premises, as set out in the original petition, and are affected thereby, the same as Howcott himself, the transfer of said companies being, in fact, mere simulations, petitioner being still, in' undisturbed possession of the property.
The petition concluded by praying for citation to the two corporations and for judgment as prayed for in the original petition.
In October, 1905, the original defendant excepted:
“That there is a misjoinder of parties defendant.” _
“That said petition discloses no cause of action.”
On May 9, 1911, Charles Louque, representing that he had purchased the rights of all of the heirs of the decedent in his succession, and that there was no administrator thereof, ruled the defendants to show cause why he should not be substituted as plaintiff in the suit.
The rule sued out by Charles Louque was made absolute, and the exceptions of misjoinder of parties and of no cause of action were overruled, by judgment of the court signed on November 20, 1911.
The Aztec Land Company and the Quaker Realty Company answered, denying all the allegations of the plaintiff’s petition, and specially denying that they or either of them were the record owners of said property.
On December 11, 1911, Charles Louque, as “plaintiff and transferee of the succession of Samuel Powers,” filed a lengthy supplemental petition, adopting all the allegations of the previous petitions filed in the suit, and further representing that on February 6, 1900, the Aztec Land Company sold, during the pendency of the suit to the Quaker Realty Company, square 7 of Marly, and that the Quaker Realty Company sold during the pendency of the suit squares 7 and 12 of Marly to Samuel S. Labouisse by notarial act duly recorded, and that on March 24, 1911, the said Labouisse quitclaimed said two squares of ground to H. A. W. Howcott, who, on May 10, 1911, quitclaimed said two squares to the Orient Company, a corporation represented by H. A. W. Howcott, president.
The supplemental petition sets forth the alleged fiduciary relations existing between W. H. Howcott and the succession of Samuel Powers, and represents that the purchasers in the name of said Howcott as aforesaid inured to the benefit of the said succession, and that he and his privies, including all of the defendants, held nominal title for the succession of Powers.
Petitioner further represented that the said W. H. Howcott by his acts and pleadings in said succession proceedings at a time when the titles to said square stood in his name recognized the same as the property of the succession, and by third opposition claimed one-half interest therein for his services under a certain contract made with the administrator, while, in fact, the said Howcott was entitled for his services to one-half of the fee of the attorney, for the administrator.
The petition further represented that said opposition was dismissed by a judgment signed on May 2, 1902, which the petitioner pleaded as res judicata and as an estoppel against the said Howcott and his privies, the defendants herein, who were merely interposed parties buying and selling without consideration, and merely for the purpose of baffling the plaintiff in the pursuit of said property.
The petition further represented that the petitioner discovered on May 1Í, 1911, that on December 14, 1903, the Aztec Land *823 Company filed a suit to confirm its tax title to squares 7 and 12 of Marly, under Act No. 101 of 1898, and in February, 1904, obtained a judgment of confirmation as prayed for.
The petition attacked said judgment on sundry grounds of nullity, and prayed that it be decreed absolutely null and void.
Petitioner further represented that as to square 12 of Marly the state taxes for 1884, 1886 and 1888 were paid previous to the auditor’s sale to Howcott, and therefore he had no title from the state to convey to said Labouisse and his transferees.
Plaintiff prayed for citation to Samuel S. Labouisse, H. A. W. Howcott, and the Orient Company.
Harley A. W. Howcott appeared and filed an exception as follows:
“Now comes Harley A. W. Howcott, solely for the purpose of this exception, and excepts that the plaintiff is without .authority or capacity to stand in judgment herein.”
Similar exceptions were filed by Labouisse and the Orient Company.
These exceptions were taken up, evidence adduced, and there was judgment in favor of the exceptors dismissing the suit of Charles Louque at his cost, and he has appealed.
Plaintiff has filed in this court another plea of res judicata based on the judgment of November, 1911, recognizing Charles Louque as substituted plaintiff.
Mr. Louque was one of the attorneys who instituted the present suit in the year 1903. He again appeared as counsel for the administrator of the succession of Samuel Powers in the year 1905. In May, 1911, Mr. Louque appeared as the purchaser of the rights of inheritance of all the heirs and legal representatives of Samuel Powers, and alleged that the office of administrator of the succession was vacant, and that there was no real necessity for the appointment of another administrator, and that he was legally competent to prosecute this suit and assert all other rights of the succession. Mr. Louque further represented that there were certain exceptions pending and undisposed of, filed October 9, 1905, and prayed that the defendants be ordered to show cause why he should not be substituted as plaintiff in this suit, and that said exceptions be fixed for trial. As stated supra, the rule was made absolute, and the exceptions were tried and overruled.
The exception to the authority and capacity of Mr. Louque to stand in judgment refers to his alleged capacity as purchaser of the right of the heirs of Samuel Powers to be substituted as plaintiff. It is true that the exception did not aver that Mr. Louque could not purchase a lawsuit, because he was at the time an attorney of record for the plaintiff, and an officer of the court in which the suit was pending, but such facts appeared on the face of the record, and, no doubt, Mr. Louque understood and appreciated the gist of the exception. The objection of vagueness urged to the exception in the court below was raised for the first time by objection to evidence. The court ruled that the objection went to the effect. Evidence was adduced on the trial of the exception, which was sustained by the judgment of the court.
We have said in a number of cases that after trial on the merits an exception of vagueness loses much of its force and effect, and affords no just reason for remanding the case, where no actual prejudice is shown to have resulted from the overruling of the exception. See Brooklyn Cooperage Company and Ozark Cooperage & Lumber Company v. Cora Planting & Mfg. Co. (No. 21179) 69 South. 195, ante, p. 807, recently handed down.
[1] The exception to the capacity of Charles Louque to prosecute this suit is based on article 2447 (2422) of the Civil Code, which reads as follows:
“Public officers connected with courts of justice, such as judges, advocates, clerks, attorneys, and sheriffs, cannot purchase litigious rights, *825 which fall under the jurisdiction of the tribunal in which they exercise their functions, under penalty of nullity, and of having to defray all costs, damages and interest.”
“A right is said to be litigious, whenever there exists a suit and contestation of the same.” C. C. -2653. . •
“Litigious rights are those which cannot be exercised without undergoing a lawsuit.” O. C. 3556.
In the case of State v. Nix, 135 La. 814, 66 South. 232, this court said:
“The Code from motives of public policy prohibits attorneys at law from purchasing litigious rights. Copley v. Lambeth, 1 La. Ann. 316; Morris v. Covington, 2 La. Ann. 259; Copley v. Moody, 2 La. Ann. 487.”
We also cited Watterston v. Webb, 4 La. Ann. 173, Pipes v. Norsworthy, 25 La. Ann. 557, and continued as follows:
“Both of these decisions were affirmed in Buck and Beauchamp v. Blair & Buck, 36 La. Ann. 20, in which it was held that a judgment •against which an action in nullity was pending was a litigious right, and that the transfer of interest in such judgment to an attorney in part payment of fees was a nullity, because prohibited by article 2447 of the Civil Code. See, also, Denny v. Anderson, 36 La. Ann. 762, where an attorney purchased all of plaintiff’s rights in a pending suit.”
In the same case we said:
“Article 2652 refers to sales Of litigious rights permitted by law, and article 2654 exempts a coheir or a coproprietor from its provisions.”
In Duson, Curator, et al. v. Dupre et al., 33 La. Ann. 1131, the plaintiff, as curator of succession of Louis Blanc, instituted a petitory action to recover a valuable tract of land; •and, pending the suit, O. C. Duson, sheriff of the parish, purchased from the heirs of Louis Blanc all their rights, title, and interest in .and to the-land in controversy. The court held that the transaction was null and void under C. C. 2447, as the purchase of a litigious right by an officer of the court in which the suit was pending.
Mr. Louque purchased from each and ev-ery heir “all his right, title, and interest in -and to the succession of Samuel Powers, No. 42592 of the civil district court for the parish of Orleans, state of Louisiana.” By virtue of the title thus acquired he had himself substituted as plaintiff in this suit. The contention that Mr. Louque purchased the rights of heirs in the succession, but not the litigious rights involved in this suit, is self-destructive, because, if he did not acquire the rights of the plaintiff herein, he has no standing in court to assert them. Grayson v. Sanford, 12 La. Ann. 646, does not aid the plaintiff, as the right of the heir was not contested at the time of the purchase by the attorney, and the litigation involving the extent of that right arose thereafter. But in this case the litigation existed at the date of the purchase, which quoad such litigation was a purchase of a litigious right. Consolidated Association v. Comeau, 3 La. Ann. 552; Lane v. Cameron, 36 La. Ann. 779.
The contention that there was no contestation in this suit is refuted by the record, which shows that the defendant, in his answer, denied all and singular the allegations of the original petition. The averment of defendant that he was not at the time of the filing of the suit the owner and possessor of the property described in the petition detracted nothing from his denial of all the allegations therein contained. The first supplemental petition was put at issue by a default which was a joinder of issue. It seems to us that the contestation was perfect.
The contention by plaintiff that the last three defendants, cited to answer his claim of ownership, have no interest to invoke the nullity of his purchase, cannot be serious. The Orient Company is the present record owner of the property, by purchase from H. A. W. Howcott, who bought from S. S. Labouisse, who derived his title, through mesne conveyances from the original defendant. The crux of plaintiff’s action is that the purchases of the property in dispute made by W. H. Howcott inured to the benefit of the succession of Powers; and, as Howcott had *827 sold the property, his assigns were necessary parties to the suit to annul their titles.
Plaintiff did not give the statutory notice of the pendency of the action, and therefore the defendants had the legal right to deal with the property as if no such suit had been instituted.
[2] Samuel S. Labouisse acquired title to the property in dispute in November, 1907, several years before Mr. Louque made his purchase from the heirs. Labouisse and his assigns were not made parties to the suit until after the rendition of the judgment substituting Mr. Louque as plaintiff in the action. When said judgment was rendered, the only parties defendant were W. H. Howcott, the Aztec Land Company, and the Quaker Realty Company, and no notice of lis pendens had been filed in the mortgage office as required by Act No. 134 of 1898, which declares that in such a case the pendency of an action “shall not be considered or construed as notice of such claim to third persons, not parties to said suit.” It follows that Labouisse and his assigns were not affected by the pendency of the suit and the proceedings therein prior to the date, on which they were cited as defendants. I-Ience, as to these defendants who were not parties to the suit, and were not affected by Its pendency, the judgment substituting Mr. Louque as plaintiff is res inter alios acta, and does not constitute res judicata. See R. McWilliams v. Gulf States Land & Improvement Co., 111 La. 197, 35 South. 514.
In conclusion we may state that the purchase by Mr. Louque of the interest of the heirs in the succession of Powers was not, under the doctrine of Grayson v. Sanford, supra, the purchase of a litigious right, and that none of the heirs have made complaint of that transaction, which seems to have been satisfactory to all concerned. 'But we are constrained to hold that, while Mr. Louque had the legal right to purchase the interest of the heirs in the succession as an entirety, he was prohibited from thereby acquiring the rights of the succession then involved in this litigation. See Consolidated Association v. Comeau and Lane v. Cameron, cited supra.
Wé consider the judgment below as going, no further than to dismiss the proceedings instituted by Mr. Louque leaving the original suit on the docket to be proceeded with according to law.
Judgment affirmed.
MONROE, O. J., takes no part.